

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **(Under Seal)** |
| | ) | |
| v. | ) | Case No.  1:15-mj-325 |
| | ) | |
| REZA NIKNEJAD, | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

I, David L. Martinez, being duly sworn, hereby state as follows:

### INTRODUCTION

1.     I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have

served in that capacity since July 2010.   I am currently assigned to the Counterterrorism Division,

Washington Field Office and my primary investigative responsibility involves counterterrorism

matters that occur within the United States.   Throughout my career with the FBI, I have

participated in investigations of organizations and individuals engaged in terrorism and terrorist

activity.   As a Special Agent with the FBI, my duties include the investigation of violations of

federal criminal law, including violations of Title 18, United States Code, Sections 2339A and B,

which criminalize providing material support or resources to groups that engage in terrorist acts

and designated foreign terrorist organizations, and attempting and conspiring to provide material

support or resources to such designated terrorist organizations or terrorists, and Title 18, United

States Code, Section 956, which criminalizes conspiring to kill or injure persons or damage

property in a foreign country.   Moreover, as an FBI Special Agent, I am also authorized to

investigate violations of the laws of the United States generally and to execute search and seizure warrants issued under the authority of the United States.

2.      Through my training and experience, I have become familiar with the manner in which individuals engaged in terrorist activity operate and communicate, and some of the methods that are used to conceal evidence of participation in terrorist activity. In my experience, individuals providing material support or resources to terrorist organizations will maintain records online and utilize numerous internet service providers. It is also my experience that these same individuals use the internet and all online instrumentalities, such as business websites, e-mail, social media, and other internet-based applications to conduct, promote and facilitate their illegal activities.

3.      The facts set forth in this affidavit are based on personal observations, my review of audio, video, and computer/online communications, and other materials obtained during the course of this investigation, as well as information provided by multiple Cooperating Witnesses (CW), FBI agents, other government personnel with knowledge relating to this investigation, and statements made by the subjects of this investigation. This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all of my knowledge of, or the government's investigation into, the matters described herein.

4.      This affidavit is submitted in support of charging Reza Niknejad with multiple counts, set forth below:

Count One, conspiracy to provide material support and resources, namely, personnel, to a designated foreign terrorist organization knowing that the organization was a designated terrorist organization and that the organization had engaged in and was engaging in terrorist activity and terrorism, in violation of Title 18, United States Code, Section 2339B. Specifically, the evidence

2

set forth below establishes that Reza Niknejad and Ali Shukri Amin conspired together and with others, known and unknown, to facilitate Niknejad's and others' travel to Syria to fight with the Islamic State of Iraq in the Levant (ISIL).

Count Two, conspiracy to provide material support and resources, namely personnel, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section 956 of Title 18, specifically a conspiracy to kill, kidnap, maim or injure persons or damage property in a foreign country, as charged in Count 3, in violation of Title 18, United States Code, Section 2339A.

Count Three, conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country, namely Syria, in violation of Title 18, United States Code, Section 956(a).

## PROBABLE CAUSE

5.    Based on the evidence set forth below, there is probable cause to believe that Niknejad has violated Title 18, United States Code, Section 2339B by conspiring to provide material support and resources to ISIL, a designated terrorist organization, Title 18, United States Code, Section 2339A by conspiring to provide material support and resources to terrorists, and Title 18, United States Code, Section 956 by conspiring to kill or injure Americans in a foreign country.   Specifically, the evidence set forth below shows probable cause that Niknejad, and other co-conspirators, known and unknown, conspired to, and successfully facilitated, the travel of Niknejad to Syria for the purpose of providing material support to ISIL by joining and fighting with ISIL.

### A.  Background on the Islamic State of Iraq and the Levant

6.    On October 15, 2004, the United States Secretary of State designated al-Qaeda in Iraq, then known as Jam 'at al Tawhid wa'al-Jahid, as a Foreign Terrorist Organization under

3

Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224.

7.      On May 15, 2014, the Secretary of State amended the designation of al-Qaeda in Iraq as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant as its primary name.  The Secretary also added the following aliases to the ISIL listing:  The Islamic State of Iraq and al-Sham; the Islamic State of Iraq and Syria; ad-Dawla al-Islamiyya fi al-Iraq wa-sh-Sham; Daesh, Dawla al Islamiya; and Al-Furquan Establishment for Media Production.  To date, ISIL remains a designated foreign terrorist organization.

8.      Based on my training and experience, I know that: (a) Sunni extremists and others, who are not citizens or residents of Syria and Iraq, are traveling to Syria and Iraq to join ISIL and commonly enter Syria by crossing the border from Turkey; (b) foreign fighters from Western countries are traveling to locations in Turkey, including Istanbul, and then traveling to towns closer to the border, such as Gaziantep and Urfa, where they are brought into Syria to join ISIL; (c) Abu Baker al-Baghdadi is the current leader of ISIL; (d) ISIL is also frequently referred to as ISIS (an acronym for the Islamic State of Iraq and al-Sham or the Islamic State of Iraq and Syria); and (e) ISIL also refers to the physical geographic territory in Iraq and Syria claimed by ISIL as the "Islamic State."

### B. Defendant Niknejad

9.      Niknejad was born in Tehran, Iran, on March 7, 1996. On April 29, 2002, Niknejad became a naturalized citizen of the United States. Niknejad is currently believed to be in Syria and a member of ISIL.

4

### C. Co-Conspirator Ali Amin

10.     On or about February 27, 2014, the FBI received information that Amin was communicating online with known and unknown individuals believed to be members of ISIL, and that Amin had begun to espouse views supportive of violent jihad.

11.     During the course of this investigation, I have learned that Amin has used online social media sites to communicate with associates about his radical Islamic beliefs, his desire to travel to Syria to join ISIL and the facilitation of the travel of others, including Niknejad, to join ISIL in Syria.

12.     On or about November 3, 2014, United States Magistrate Judge Ivan D. Davis issued a warrant to search Amin's HTC One smartphone, a flip-style cellular telephone, and Amin's desk-top computer hard drive.   The search of these devices revealed evidence that Amin utilized internet based computer messaging to communicate with associates located in multiple countries outside of the continental United States, specifically, unindicted co-conspirator #1 ("UCC #1"), unindicted co-conspirator #2 ("UCC #2"), unindicted co-conspirator #3 ("UCC #3"), unindicted co-conspirator #4 ("UCC #4"), and unindicted co-conspirator #5("UCC #5"), about traveling to Syria to join ISIL and about facilitating Niknejad's travel to Syria to join ISIL. Through review of this evidence I learned that:

> a.  Beginning in approximately June 2014, Amin communicated with known and unknown associates, including, at various times, Niknejad, UCC #1, UCC #2, UCC #3, UCC #4 and UCC #5 via secure online communications applications.   UCCs 1 through 5 are known associates believed to be residing outside of the United States.

      b.  Amin discussed traveling to Syria for violent jihad using code phrases such as "Syracuse" for Syria, "basketball" for jihad, and "basketball team" for a jihadist organization.

      c.  On or about June 27, 2014, Amin communicated with UCC #1 via Skype and stated that, "the meeting went well.  Everyone wants to go.  [UCC #6] may delay a bit, Reza (ex-Shia) said when I go, he will."  Based on my training and experience, I believe "Reza (ex-Shia)" refers to Niknejad.  This Skype chat was located on Amin's desk-top computer during analysis of the image of the hard drive made pursuant to the search warrant mentioned in paragraph 12, above.

**D.  Niknejad's Travel to Syria to Join ISIL**

13.     On January 19, 2015, the Prince William County Police Department notified the FBI that Niknejad's family had reported him missing.

14.     Beginning on January 19, 2015, FBI agents investigated Niknejad's whereabouts and the circumstances surrounding his disappearance.  This investigation revealed that:

15.     Niknejad was last seen by his family on January 14, 2015, when he claimed to have departed with an unknown friend for a camping trip.

16.     Prior to his departure, Niknejad had installed an internet based computer messaging application on the family's new laptop computer and provided his contact address and username as "Abu Yusuf al Farisi."  Approximately three to four months before Nikenejad's departure, Amin put UCC #2 and Niknejad in touch via a secure online messaging application in order to facilitate Niknejad's travel to Syria for the purpose of joining ISIL.

17.     When Niknejad did not return on January 18, 2015, as expected, Niknejad's sister accessed his bank records and found that he had purchased an airline ticket to Turkey.

18.     U.S. Customs and Border Protection confirmed that, on January 14, 2015, Niknejad departed on Turkish Airlines Flight 8 from Dulles International Airport to Istanbul, Turkey and arrived in Istanbul on January 15, 2015.  Niknejad had onward travel booked to Athens, Greece aboard Turkish Airlines Flight 1843, but he did not board the aircraft.  Based on my training and experience, westerners traveling to join ISIL and other extremist groups in Syria often travel across the border between Turkey and Syria.

19.     A review of secure online communications revealed that once in Istanbul, Niknejad met up with UCC #2, UCC #3 and UCC #4, and the group traveled to Gaziantep, and then the border town of Urfa to meet an ISIL contact and cross into Syria.

20.     Investigation revealed that Amin had communications with UCC #2 via secure online communications applications during UCC #2, UCC #3, and UCC #4's travel from London to Istanbul, Turkey, where the group met up with Niknejad, who had traveled from Dulles to Istanbul, Turkey.   From Istanbul, UCC #2, UCC#3, UCC #4 and Niknejad (the "group") continued on to Syria.   This messaging exchange included detailed communications between Amin and UCC #2 regarding each leg/phase of the group's travel to Syria.   These exchanges also included numerous photographs of the group at various locations along the route, namely photographs at Heathrow Airport, a hotel room in Kiev where UCC #2, UCC #3, and UCC #4 stayed on their way to Istanbul, photographs of the various members of the group in Istanbul at the Blue Mosque following their link-up with Niknejad, and photographs of the countryside as they traveled via coach [bus] to the Syrian border.   The final communication from UCC #2 was an audio file sent to Amin on January 16, 2015 in which UCC #2 states, using the Arabic term, that they are "in the Islamic State."   There were no further communications from any members of the group following this message.

7

21.     On January 18, 2015, Niknejad's family received an envelope in the mailbox. Subsequent investigation revealed that Amin and UCC #6 had delivered this envelope to the Niknejad family at the request of Reza Niknejad.   The contents of the envelope included a USB thumb drive and a handwritten letter from Niknejad asking his family to read the letter contained on the thumb drive.   The thumb drive contained a number of family photographs and a letter from Niknejad to his family.   In the letter, Niknejad expressed his love for his family and stated that he had traveled to Medina, Saudi Arabia, to further study Islam; however, the implication of the letter was that he did not plan on seeing his family again.   Based on my training and experience, this message is consistent with Niknejad traveling to Syria to join and fight with ISIL.

22.     On or about February 4, 2015, Niknejad called his mother at the family residence in the Eastern District of Virginia.   During this conversation, Niknejad spoke about how well he was being treated in the "Khalifah," that he was going to "fight against these people who oppress the Muslims," and that he would see her in "Jannah."[1]

---

[1]  Based on my training and experience, the transliterated Arabic term *khilafah* means the ruler of the Islamic State or Caliphate.   One of the stated goals of Radical Islamic Extremist is to establish the Islamic State or Caliphate that would be ruled by the Caliphate or *Khilafah*.   In the above context, this is believed to be a reference to the physical location of ISIL in Syria/Iraq.   Additionally, the term *Jannah* refers to paradise, heaven or the afterlife in Islam.

8

## CONCLUSION

23.    Based upon the foregoing, there is probable cause to believe that, from in or about June 2014, and continuing through the present date, within Prince William County, Virginia, in the Eastern District of Virginia and elsewhere, Niknejad knowingly and unlawfully conspired with multiple individuals to provide material support to a designated terrorist organization (ISIL), in violation of Title 18, United States Code, Section 2339B, to provide material support to terrorists, in violation of Title 18, United States Code, Section 2339A, and to kill or injure Americans in a foreign Country, in violation of Title 18, United States Code, Section 956.

Respectfully submitted,

David L. Martinez
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 10th day of June, 2015.

/s/

Ivan D. Davis
United States Magistrate Judge

9